**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BRIAN D.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 19-cv-04149** |
| **v.** | ) | |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,[1]** | ) | **Magistrate Judge Jeffrey I. Cummings** |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Brian D. ("Claimant") brings a motion to reverse the final decision of the Commissioner

of Social Security ("Commissioner") denying his claim for disability insurance benefits

("DIBs"). The Commissioner brings a motion for summary judgment seeking to uphold the

decision to deny benefits. The parties have consented to the jurisdiction of a United States

Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter

pursuant to 42 U.S.C. §405(g). For the reasons that follow, Claimant's motion to reverse the

decision of the Commissioner (Dckt. #15) is granted and the Commissioner's motion for

summary judgment (Dckt. #24) is denied.

## I.    BACKGROUND

### A.    Procedural History

On November 3, 2015, Claimant (then forty years old) filed a disability application

alleging disability dating back to May 25, 2012, due to back pain and mental health impairments.

---

[1] In accordance with Internal Operating Procedure 22, "Privacy in Social Security Opinions," the Court refers to Claimant only by his first name and the first initial of his last name. Furthermore, Kilolo Kijakazi is now the Acting Commissioner of Social Security and is substituted in this matter pursuant to Fed. R. Civ. P. 25(d). No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

(R. 197-200). Claimant's application was denied initially and upon reconsideration. (R. 41). Claimant filed a timely request for a hearing, which was held on April 5, 2018, before an Administrative Law Judge ("ALJ"). (R. 56-93). Claimant appeared with counsel and offered testimony at the hearing. Claimant's wife and a vocational expert also offered testimony. On June 25, 2018, the ALJ issued a written decision denying Claimant's application for benefits. (R. 41-50). Claimant filed a timely request for review with the Appeals Council. On April 24, 2019, the Appeals Council denied Claimant's request for review, leaving the decision of the ALJ as the final decision of the Commissioner. (R. 1-4). This action followed.

### B. Evidence in the Administrative Record

Claimant seeks disability benefits for symptoms and limitations stemming from back pain and mental health issues. Claimant was regularly employed from 1999 to 2013, working as a custodian, groundskeeper, HVAC assistant, and, most recently, a tire mechanic. (R. 242). On May 10, 2010, he was loading 110-pound tires into a truck when he injured his lower back. (R. 816). He has not worked consistently since. The administrative record contains the following evidence that bears on his claim.

### 1. Evidence from Claimant's Treating Physicians

After his injury, Claimant began seeing Daniel Troy, M.D., for lower back pain. He was treated with epidural steroid injections, (R. 314), extensive physical therapy, (R. 339), and Tramadol, a prescription pain medication, (R. 315). Still, his pain persisted. Dr. Troy described Claimant's case as "confusing," because his pain was primarily focused on the right side of his body, but his MRI demonstrated more left-sided pathology. (R. 314). He explained to Claimant that he could undergo a microscopic decompression, but there was a 50% chance that it would not help him. (*Id.*). On October 21, 2011, Dr. Troy noted that Claimant "does have low back

2

pain and does have advanced degenerative disc disease at the 3-4, 4-5 levels and he will continue to have low back pain because of that, but in my opinion, it is not bad enough to undergo fusion." (R. 312). Claimant underwent microdiscectomy surgery on April 27, 2012, but the procedure did not have the desired effect. (R. 1038-39).

Claimant began seeing Robert Erickson, M.D., in June 2012. On February 27, 2013, he underwent a second procedure but, again, saw no improvements. (R. 537). Post-operation, Claimant was diagnosed with herniated discs, radiculitis, chronic lower back pain, intractable chronic lower back pain syndrome, and post spinal surgery epidural adhesions. (R. 537). In April 2013, Dr. Erickson found that Claimant could return to work on "modified duty," but that he could work no more than four hours in a workday and could not stand for prolonged periods or lift items heavier than five pounds. (R. 595-96). Dr. Erickson recommended Claimant receive a third surgery, but Claimant's insurance did not approve the procedure and Claimant determined that the risks and costs outweighed the potential benefits. Dr. Erickson prescribed Claimant Medrol, Mobic, and Neurontin for his pain, (R. 561), which Claimant described as "sharp, stabbing, shooting, electrical-like pain," (R. 555).

Claimant received chiropractic care from John Jonihakis, M.D., beginning in 2010. On January 22, 2018, Dr. Jonihakis submitted a letter on Claimant's behalf, writing that Claimant "continue[d] to have pain in the low back area with radicular type of symptoms which radiate the pain into his legs constantly," and experienced "constant numbness and tingling." (R. 816). He added that Claimant's prognosis was not promising, as his doctors had done as much as they could to little effect. Claimant continued to experience "pain with prolonged sitting, standing, repetitive motion in the low back area" and "continue[d] to have constant pain." (R. 817). Dr. Jonihakis further observed that Claimant's "condition [was] aggravate[d] by any type of

movement, prolonged sitting over 20 minutes and the same for standing over 10-20 minutes."
(R. 816).

### 2.    Evidence from One-Time Examiners and State Agency Consultants

On March 28, 2013, Claimant underwent a Functional Capacity Evaluation.  (R. 475).
During the evaluation, Claimant was unable to bend his trunk more than sixty degrees, stand for
thirty minutes, or walk for one mile.  He was able to occasionally lift thirty pounds and carry
forty pounds for twenty feet.  He experienced increased lower back pain while standing, walking,
sitting, and twisting.  Based on these observations, physical therapist A. Hassan determined
Claimant's "current physical demand level [was] Medium."  (R. 476).

On March 9, 2014, Claimant underwent a second independent medical evaluation.  (R.
1053).  Srdjan Mirkovic, M.D., at NorthShore Orthopaedics reviewed Claimant's medical
records, examined Claimant, and evaluated his subjective complaints.  (R. 1061).  He diagnosed
Claimant with degenerative changes of the lumbar spine, chronic low back pain, and
degenerative disc disease.  (R. 1058).  Dr. Mirkovic noted that Claimant's lower back pain had
continued to worsen despite the April 2012 operation.  He further noted that the "duration of
symptoms, as well as the severity of the patient's subjective complaints, in the absence of clear
objective criteria and the presence of nonphysiologic signs . . . suggests the possibility of the
presence of psychosocial issues interfering with [Claimant's] recovery," but added that
Claimant's "chronic low back pain could be attributable to the presence of degenerative disk
disease, with aggravation of symptoms casually related to [his work injury]."  (*Id.*).  Dr.
Mirkovic described the previous functional capacity evaluation as "valid," and confirmed that
Claimant "could return to work at a medium level."  (R. 1060).  He also stated that there was no

clear justification for the work restrictions imposed by Dr. Erickson (limiting Claimant to four-hour days with no lifting or prolonged standing). (*Id.*).

On January 16, 2016, Chukwuemeka F. Ezike, M.D., a state-hired consultative examiner, performed a physical examination of Claimant. (R. 784). Claimant informed the examiner that he was capable of walking one block before needing to rest, standing for fifteen minutes at a time, sitting for fifteen minutes at a time, lifting twenty pounds, dressing himself, and driving short distances, but he needed assistance shopping. (R. 785). During the examination, Claimant was able to squat completely with difficulty, "get on and off the exam table with no difficulty," and walk fifty feet without support and with a normal gait. (R. 786). He demonstrated normal grip strength, normal ability to grasp and manipulate objects, and normal range of motion in his various joints. He demonstrated full strength in all limbs. (*Id.*).

Finally, state agency medical consultants Vidya Madala, M.D., and Richard Bilinsky, M.D., performed an assessment of Claimant on January 29, 2016, and June 21, 2016, respectively. (R. 103, 116). They each found Claimant to have disorders of the back (discogenic and degenerative), disorders of muscle, and affective disorders. (R. 99). Despite these findings, they deemed Claimant capable of occasionally lifting and carrying twenty pounds, and frequently lifting and carrying ten pounds. They noted that he could frequently balance, kneel, and crawl; occasionally climb ramps and stairs, stoop, and crouch; and never climb ladders, ropes, or scaffolds. (R. 102). They concluded that he was capable of performing light work and sitting for six hours in an eight-hour workday. (R. 101, 114).

### 3. Hearing Testimony

At the hearing, Claimant described his work injury, stating that his back "just went." (R. 69). He has since undergone two procedures. He underwent extensive physical therapy and

receives regular epidural shots, "but nothing ever worked." (*Id.*). He stopped taking pain medication because he worried that he was becoming addicted to them. (R. 71). Most days, he rates his pain level as a six or seven out of ten. He continues to see a chiropractor at least once a week, but the visits only provide a couple hours relief from the pain. (*Id.*). He uses an electronic stimulator, which he applies for twenty minutes at a time while lying on his bed. (R. 81). He does not use the machine at any specified time of day, but whenever the pain is at its worst. If he had to go eight hours without the machine, he testified that he would be in such severe pain that he would be "trying to pull [his] skin off [his] body." (R. 82). Claimant can walk about one block before having to stop and rest. (R. 74). He can safely lift and carry about twenty pounds. (R. 74-75). He can stand in one spot for five minutes or less before he needs to sit down. (R. 75). When asked how long he could sit before needing to shift or stand up, he stated "within the first five minutes." (*Id.*). He is most comfortable lying on his stomach, which he does intermittently throughout the day. (*Id.*).

As to his daily activities, Claimant is able to drive, but only for fifteen to twenty minutes before his leg goes numb. (R. 80). He can bathe and dress independently, but he cannot bend down to pick items up off the floor without experiencing pain. (*Id.*). He is unable to clean, take out the garbage, grocery shop, or do yardwork. (R. 76). He drives his children three blocks to and from school, but is unable to walk them from the car to the school doors. (R. 77). He coaches his son's recreational baseball team, which requires attending one hour-long practice and at least one game per week for three months of the year. (R. 79). When coaching, he sits or stands in the dugout while other parents lead the drills. (R. 80). In 2013, he attempted to go back to work, but he could only work one hour for two days a week. (R. 82). He sees a

psychologist once a week and takes Remeron and Adderall. (R. 72-73). He testified that his depression and back issues "go together." (R. 78).

Claimant's wife, Effie, testified that Claimant sometimes falls when his leg goes numb. (R. 84). She said he cannot wear a pair of jeans or slacks because they put too much pressure on the surgical incision site. (R. 85). She described his moods as a "huge issue." (R. 86). She repeatedly confirmed that her husband is in significant and constant pain. (*Id.*).

Gary Wilhelm, a vocational expert, also testified. He stated that an individual limited to light exertional level who can frequently climb ramps and stairs, balance, kneel, crouch, and crawl; occasionally stoop, work in unprotected heights, work moving mechanical parts, and be exposed to vibrations; and never climb ladders, ropes, or scaffolds would not be able to perform a job as a tire mechanic or custodian (Claimant's past work). (R. 88). He identified three other jobs for an individual with the same limitations: a parking meter coin operator, a housekeeping cleaner, and a collator operator. (R. 89). When asked whether there would be any jobs in the national economy for an individual with the same limitations, except he was further limited to performing sedentary work involving simple, routine tasks, with only occasional kneeling, crouching, crawling, climbing ramps and stairs, and operating a motor vehicle, Mr. Wilhelm testified that this individual could work as an envelope addresser, a food and beverage order clerk, or a stuffer. (R. 89-90). If an individual with the same limitations were to miss work two or more days a month, he would not be eligible for competitive employment. (R. 90).

When questioned by Claimant's counsel, Mr. Wilhelm testified that an individual working in the jobs he had identified might be able to lie down for half an hour during his meal break but would not be able to lie down for half an hour at an unscheduled time. (R. 91). Competitive employment would also be precluded if an individual was off-task for more than

15% of the workday. (*Id.*). Finally, Mr. Wilhelm testified that if an individual needed to alternate sitting and standing every fifteen minutes throughout the day, he "probably would not" be eligible for competitive employment. (R. 92).

### C. The ALJ's Decision

The ALJ applied the five-step inquiry required by the Act in reaching his decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since his alleged onset date of May 25, 2012. (R. 43). At step two, the ALJ determined that Claimant suffered from the severe impairments of degenerative disc disease of the lumbar spine, dysthymia, unspecified neurocognitive disorder, and ADHD. (*Id.*). At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments, including listing 1.04 for "disorder of the spine," 12.02 for "cognitive impairment," 12.04 for "depressive disorder," or 12.06 for "anxiety and obsessive-compulsive disorder." (R. 44). *See* 20 C.F.R. Part 404, Subpart P, App. 1. The ALJ found that Claimant's impairments caused mild limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace (collectively, "CPP"); and mild limitations in adapting and managing oneself. (*Id.*).

Before turning to step four, the ALJ determined that Claimant had the residual functional capacity ("RFC"):

> to perform sedentary work as defined by 20 CFR 404.1567(a) except that the [C]laimant is only capable of frequent balancing; occasional stair/ramp climbing, stooping, kneeling, crouching, or crawling; but should never climb ladders, ropes, or scaffolds. The [C]laimant may occasionally work at unprotected heights, occasionally working with moving mechanical parts, have occasional exposure to vibrations, and can only operate a motor vehicle on an occasional basis. The [C]laimant is only ca[pa]ble of understanding, remembering, and carrying out simple, routine tasks.

(R. 45). At step four, the ALJ determined that Claimant was not capable of performing past relevant work as a tire mechanic. (R. 49). At step five, the ALJ concluded that, given Claimant's age, education, and RFC, he could perform jobs that exist in significant numbers in the national economy. (R. 50). As such, the ALJ found that Claimant was not under a disability from his alleged onset date through the date of his decision. (*Id.*).

## II. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must demonstrate that he is disabled. An individual does so by showing that he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision when the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

## III.    ANALYSIS

### A.    The ALJ's Failure to Build a Logical Bridge Between the Evidence and his RFC Determination Requires Remand.

In support of remand, Claimant alleges that the ALJ: (1) did not appropriately assess his limitations in sitting down when evaluating his RFC; (2) failed to correctly evaluate his symptoms and credibility; and (3) failed to appropriately limit his RFC in accordance with his mental restrictions. Because the Court agrees with Claimant's first argument and finds that a remand is warranted, it will not reach Claimant's second and third arguments. (The Court's decision in this regard is not a commentary on the merits of Claimant's remaining arguments and he is free to reassert them on remand.)

The essential question here is whether the ALJ's finding that Claimant had the RFC to perform sedentary work, with the noted limitations, is supported by substantial evidence. Under the pertinent regulation, "sedentary work . . . requires sitting for 6 hours and standing and/or

10

walking for 2 hours during an 8-hour workday." *Collins v. Astrue*, 324 Fed.Appx. 516, 517 (7th Cir. 2009) (citing 20 C.F.R. 404.1567(a); Social Security Ruling ("SSR") 83-10, 1983 WL 31251 (Jan. 1. 1983)).

In conducting his RFC analysis, the ALJ first determined that Claimant had underlying medical determinable impairments that arose following his work-related back injury in 2010 and could reasonably be expected to produce Claimant's pain and other symptoms. (R. 45-46). In particular, the ALJ noted that Claimant: underwent a L-5-S1 hemilaminectomy after conservative measures failed to provide relief and subsequent MRIs and X-rays showed further deterioration of his lumbar spine; attended dozens of physical therapy sessions without significant relief; and received partial pain relief from the use of Neurontin but no significant relief from a series of epidural injections. (R. 46). Despite these findings, the ALJ concluded that Claimant's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence. (*Id.*).

The ALJ then referenced the evaluations of the following healthcare practitioners who either treated Claimant or performed physical assessments of him: (1) physical therapist Hassan, who found on March 28, 2013, that Claimant had a "physical demand level" that was "medium," (R. 476); (2) Dr. Mirkovic (an orthopedic surgeon), who found on March 9, 2014, that Claimant "could return to work at a medium level," (R. 1060); (3) Dr. Madala (a state agency consultant), who found on January 29, 2016, that Claimant had an RFC which allowed him to sit, and to stand, and/or walk for "[a]bout 6 hours in an 8-hour workday," occasionally lift twenty pounds, and frequently lift ten pounds, (R. 101);[2] and (4) Dr. Bilinksy (a second state agency consultant),

---

[22] Work that has the above requirements is defined as "light work" under the pertinent regulations. *See* SSR-83-10, 1983 WL 31251, at *5-6.

who found on June 21, 2016, that Claimant had the same RFC as defined by Dr. Madala, (R. 114). (R. 47-48).[3] The ALJ gave these opinions "great," "some," "partial," and "partial" weight, respectively, and noted that each opinion was consistent with the evidence at the time the assessments were made. (R. 47-48).

Nonetheless, the ALJ eschewed reliance on each of these opinions in formulating the RFC based on his finding that "*[m]ore recent* evidence reflects that the claimant is limited to work at the . . . sedentary exertional level" given the combination of Claimant's impairments. (R. 47-48) (emphasis added). The ALJ never specifically identified the "more recent evidence" indicating that Claimant could perform sedentary work. In fact, the only medical evidence referenced by the ALJ that post-dates the 2016 assessments of Drs. Madala and Bilinsky – namely, the January 22, 2018 report of Dr. Jonihakis, (R. 46) – suggests that Claimant *cannot* endure the six hours of sitting and two hours of standing each day that sedentary work entails. In particular, Dr. Jonihakis stated that:

> [u]pon examination patient was in a lot of pain with any range of motion and very hypertonic to his lumbar spine area. His condition is aggravate[d] by any type of movement, prolonged sitting over 20 minutes and the same for standing over 10-20 minutes. . . . His prognosis is the same as his Orthopedist told him that they have done as much as they can do and his pain will be there and fluctuate with activities of daily living which will aggravate his pain, also he still gets pain with prolonged sitting, standing, repetitive motion in the low back area. He continues to receive conservative treatments in our office once per week and continues to have constant daily pain to this day.

(R. 816-17).

---

[3] The ALJ also referenced January 16, 2016 report of Dr. Ezike, another state-hired consultative examiner, who performed a physical examination on Claimant. (R. 48). Although Dr. Ezike did not assess Claimant's RFC, his report noted that Claimant "still complains of low back pain, which he describes as constant, dull, achy, occasionally sharp, about 5/10 in severity, radiating down to the right lower extremity" and that Claimant "states he can walk one block, stand for 15 minutes and sit for about 15 minutes at a time." (R. 784-85).

12

Claimant's April 5, 2018 hearing testimony regarding his inability to sit and stand for prolonged periods (*supra*, at Section I(B)(4)) also post-dates the 2016 medical assessments and is consistent with the limitations that Dr. Jonikakis had documented ten weeks earlier. Because the only "more recent evidence" identified by the ALJ supports a finding that Claimant is *not* capable of sedentary work, the ALJ's RFC determination that Claimant *is* capable of such work is unsupported. *See Garcia v. Colvin*, 741 F.3d 758, 762 (7th Cir. 2013) ("No physician testified – no medical records [re]vealed – that Garcia has the residual functional capacity ascribed to him by the administrative law judge.").

Despite this, the Commissioner makes several arguments in support of their position that the ALJ properly determined Claimant's RFC. First, the Commissioner asserts that the ALJ did, in fact, identify evidence that supports his conclusion that Claimant can perform sedentary work, such as Claimant's ability to carry twenty pounds, mount and dismount an exam table, walk on heels and toes, walk more than fifty feet with a normal gait, and sit for six hours per day. (Dckt. #25 at 3). However, the ALJ discounted this evidence (which is derived from the pre-2017 opinions of the medical professionals who evaluated Claimant and shows that he could perform light work) based on his determination that "more recent evidence" shows that Claimant's RFC is limited to sedentary work. (R. 47-48). The ALJ was required to identify this "more recent evidence," yet he failed to do so.

According to the Commissioner, this type of explanation is unnecessary because "'[i]f someone can do light work . . . she can also do sedentary work.'" (Dckt. #25 at 4, *quoting* 20 C.F.R. §404.1567). But, again, this inference does not apply since the ALJ concluded that Claimant cannot do light work. Moreover, the regulation contains an important qualification that the Commissioner omitted: specifically, the proposition that someone who can do light work can

13

also do sedentary work does *not* apply where "there are additional limiting factors such as . . . inability to sit for long periods of time." 20 C.F.R. §404.1567(b). As stated above, the most recent medical evidence (Dr. Jonihakis' January 22, 2018 report) indicates that prolonged sitting (over twenty minutes) would cause Claimant to experience aggravated back pain. (R. 816-17).

Next, the Commissioner asserts that Claimant "presents no evidence in support of his purported sitting difficulty other than his own subjective complaints." (Dckt. #25 at 5). This too is incorrect. The ALJ properly found that degenerative disc disease of the lumbar spine was one of Claimant's severe impairments and that this impairment could reasonably be expected to produce Claimant's pain and other symptoms. (R. 43, 46). Moreover, Claimant's physicians gave Claimant epidural injections and prescribed powerful pain medicine for him (including Tramadol, Neurontin, Medrol, and Mobic). (R. 315, 561). The fact that they did so "indicate[s] that they believed the [C]laimant's symptoms were real." *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014); *Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir. 2004). This evidence supports Claimant's assertion that he "c[an]not sit for prolonged periods." *Liggins v. Colvin*, 593 Fed.Appx. 564, 569 (7th Cir. 2015) (evidence that claimant was diagnosed with disc degeneration and received an epidural steroid injection was consistent with physician's opinion that he "could not sit for prolonged periods.").

Finally, the Commissioner argues that the ALJ's references to Claimant's daily activities – such as his ability to drive, provide childcare, and coach his son's baseball team – in other sections of the decision can be used to support his conclusions in the RFC section. (Dckt. #25 at 7-8). In particular, the ALJ cited Claimant's ability: (1) to coach his son's baseball team to support his finding that Claimant has only mild limitations in interacting with others; (2) to drive to support his finding that Claimant has only moderate limitations in his ability to concentrate,

14

persist, or maintain pace; and (3) to provide childcare to support his finding that Claimant has

only mild limitations in his ability to adapt or manage himself. (R. 44). However, the ALJ did

not identify Claimant's activities of daily living as the "more recent evidence" he relied upon to

formulate Claimant's RFC. Moreover, the inferences that the ALJ drew from Claimant's ability

to perform these activities provide no support for a conclusion that Claimant can perform the

hours of sitting and standing required each day for sedentary work.[4]

In sum: the Commissioner has failed to identify any evidence in the record (aside from

the ALJ-rejected pre-2017 medical opinions) which indicates that Claimant can meet the sitting

and standing requirements for sedentary work.

Even if there were other evidence in the record that might, on its own, support a finding

that Claimant is capable of sedentary work, the Court cannot uphold the ALJ's decision because

he failed to "build an accurate and logical bridge between the evidence and the result." *Sarachet

v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *Bjornson v. Astrue*, 671 F.3d 640, 649 (7th Cir.

2012) (remanding where the ALJ's "opinion failed to build a bridge between the medical

evidence (along with [claimant's] testimony, which seems to have been fully consistent with the

evidence) and the conclusion that she is able to work full time in a sedentary occupation"); *Scott

v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ needed to explain how she reached her

conclusions about [claimant's] physical capabilities."); *Briscoe ex rel. Taylor v. Barnhart*, 425

F.3d 345, 352 (7th Cir. 2005) (where the ALJ "did not explain" how he arrived at his conclusions

regarding claimant's RFC, that "omission in itself is sufficient to warrant reversal of the ALJ's

---

[4] The Seventh Circuit has cautioned ALJs against inferring that a claimant can perform the duties required
for full-time work from the fact that he or she can engage in certain activities of daily living. *See, e.g.,
Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014) ("This is an even more extreme example of a
problem we have long bemoaned, in which administrative law judges have equated the ability to engage
in some activities with an ability to work full-time, without a recognition that full-time work does not
allow for the flexibility to work around period of incapacitation.").

decision."). Consequently, the ALJ's failure to identify what "recent evidence" led him to conclude that Claimant is capable of sedentary work – as opposed to medium or light work on the one hand, or no work on the other hand – requires remand.

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse the decision of the Commissioner (Dckt. #15) is granted and the Commissioner's motion for summary judgment (Dckt. #24) is denied. This case is remanded to the Social Security Administration for further proceedings. It is so ordered.


**ENTERED:   May 27, 2022**

**Jeffrey I. Cummings**
**United States Magistrate Judge**